## EDWARD CLARKE *vs.* FRANCIS SIBLEY & others.

The owners of several estates, being jointly interested in the water power connected therewith, formed a company, and entered into an agreement, by indenture, in which each covenanted, for himself and his personal representatives or assigns, with the others and their respective personal representatives or assigns, and his and their respective estates, for the faithful performance of the conditions and provisions of said indenture, "meaning and intending to create a lien upon and to bind" their "said estates, so far as" they might, "in law or equity, do the same, and" their "several heirs, executors, administrators, or assigns, so far as said estates," &c. were "concerned, and to the extent thereof, and no further, as fully and absolutely, and as far as" they might "do the same, either in law or equity, for the faithful discharge and fulfilment of all the liabilities of said company, and of the requirements and provisions of said indenture:" C., one of the parties to said indenture, having afterwards incurred expense, pursuant to the provisions of the indenture, for the purpose of increasing the water power, in which all the parties to the indenture were jointly interested, brought a bill in equity against third persons, to whom some of said parties had conveyed their said estates, praying that they might be held to pay him their shares and proportions of said expense, and also praying for general relief. *Held,* that the indenture could not be so construed as to operate as a legal mortgage; that it could be regarded only as an equitable mortgage; that if it created any lien, implying a trust, it was a trust *sui generis,* in the nature of an equitable mortgage, of which the court has no jurisdiction; and that the bill must be dismissed.

WILDE, J. This is a bill in equity, brought against Francis Sibley, William A. Robinson, and Edward M. Robinson. The bill is founded on an agreement, by indenture, between the plaintiff and several other persons named in the bill, in which they covenanted with each other to pay and discharge their respective shares of certain expenses agreed to be incurred, for the purpose of increasing the water power, in which they were jointly interested, as a company. The following

are the clauses in the said agreement, on which the plaintiff relies: "It is hereby agreed between the said parties and the members of said company, each for himself respectively, and for his respective executors, administrators or assigns, does covenant, promise and agree, each with the other of them, his respective executors, administrators or assigns, and his and their respective estates hereinafter mentioned, and to the extent hereinafter mentioned, for the due and faithful execution and performance of all the conditions and provisions of this instrument." And after enumerating those conditions and provisions, the following clause is added : " Meaning and intending hereby to create a lien upon, and to bind, our said estates, so far as we may in law or equity do the same, and our several heirs, executors, administrators or assigns, (so far as said estates, water power, mills and manufacturing establishments are concerned, and to the extent thereof, and no further,) as fully and absolutely, and as far as we may do the same, either in law or equity, for the faithful discharge and fulfilment of all the liabilities of said company, and of the requirements and provisions of this instrument, so long as they shall remain members of this company, as is hereinafter provided."

The defendants were not parties to this agreement ; but the bill alleges, and they admit, that they have since purchased the estates of several of the parties to it, which estates were mentioned therein, and upon which the parties thereto intended to create a lien.

The bill alleges that the plaintiff has incurred an expense of four thousand dollars for the purpose of increasing the water power, in which the parties to said agreement were jointly interested, and he prays that the defendants may be held to pay him their shares and proportions of said four thousand dollars, with interest, and that the court will grant such further relief in the premises as justice and equity may require.

The defendants have severally filed an answer, in which various facts are stated, which the court have not found it

necessary to scrutinize. A hearing was had, at a former term, on the bill and answers, and elaborate arguments were made In these arguments, several questions were discussed, which, according to the opinion of the court upon the main point in dispute, have become immaterial.

The question is, whether the defendants, by purchasing the estates of some of the original parties to the aforesaid agreement, have become liable to pay any share or shares of the expenses which have been incurred by the plaintiff in pursuance of that agreement.

The plaintiff's counsel contend that, by these clauses of the agreement, a charge was created on the estates now owned by the defendants, and that they are personally bound to pay the shares of the expenses claimed.

The question as to the defendants' personal liability we do not consider material; for if these are covenants running with the land, as the plaintiff contends, he has an adequate and appropriate remedy at common law, by an action of covenant. We think it, however, very clear, from the authorities cited, that these are not covenants running with the land, and that the defendants are in no respect liable to contribution for the expenses claimed, unless by the agreement a charge was created on their estates. The main question therefore is, whether the defendants' estates are thus charged. It has been argued, that the agreement may be so construed, as to operate by way of mortgage; such being the intention of the parties, although there are no words of grant in the agreement, by which any estate would pass from the covenantors. That this agreement is to be construed according to the intention of the parties, if it can be done consistently with the rules of law, is very true; but this must clearly appear from the words of the deed; and this, we think, does not appear. The parties intended, no doubt, to create a lien on their respective estates, either in law or equity; for such is the language of the agreement. But it cannot be inferred that they intended to convey their estates to each other by legal mortgages; for, in such case, the mortgagees would be entitled to immediate possession

although they had made no advances, and had incurred nc liabilities, under the agreement. The language of the agreement is inconsistent with any such inference. The intention of the parties was, as expressed, to create a lien on, but not to convey, their estates. This argeement, therefore, cannot be construed as conveying any estate by way of a legal mortgage; it can only be considered as an equitable mortgage, of which this court has no jurisdiction, as was decided in *Eaton* v. *Green*, 22 Pick. 526.

But if this were a mortgage in common form, the plaintiff's proper remedy would be by a writ of entry.

Then it has been argued for the plaintiff, that the lien created by the agreement operates on the defendants' separate estates, by way of an implied trust, of which this court has jurisdiction by the Rev. Sts. c. 81, § 8. That a mortgage is considered as a trust, and the mortgagee a trustee of the mortgagor, is very true; but it is a trust *sui generis*, which is defined with great ability and perspicuity by Sir Thomas Plumer, in *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 183, 184. "It is only," he says, "in a secondary point of view, and under certain circumstances, and for a peculiar purpose, that the character of trustee constructively belongs to a mortgagee. No trust is expressed in the contract; it is only raised by implication, in subordination to the main purposes of it, and after that is fully satisfied; its primary character is not fiduciary." " A trustee is stopped in equity from dispossessing his *cestui que trust*, because such dispossession would be a breach of trust. A mortgagee cannot be stopped, because in him it is no breach of trust, but in strict conformity to his contract." " This presents no resemblance to the character of a trustee, but to ε character directly opposite." Now, we are of the opinion that if any lien, implying a trust, was created by this agreement, it was a trust of this peculiar nature. The parties intended, we have no doubt, to create a lien on their separate estates by way of mortgage; but not such a mortgage as can be enforced, by the rules of law or equity, in this Commonwealth It was intended to create a lien, without conveying

any legal title in their estates, as collateral security for the performance of the covenants in the indenture. No fiduciary trust was expressed or intended. . Such a lien might be enforced by a court having jurisdiction of equitable mortgages ; but it was well settled, in *Eaton* v. *Green*, that this court has no such jurisdiction. By the Rev. Sts. *c.* 107, § 34, our jurisdiction, in cases of mortgages, is limited to those made by a common deed of mortgage, or such as are made by a conveyance, with a separate deed of defeasance.

This principle being settled, it cannot be supposed that the legislature intended to enlarge the jurisdiction of the court by the Rev. Sts. *c.* 81, § 8, so as to extend to trusts arising from legal or equitable mortgages. It is a settled rule of construction of the statutes conferring equity jurisdiction, that it is not to be extended beyond what is manifestly given.

In *Hunt* v. *Maynard*, 6 Pick. 489, it was decided that the court had no jurisdiction, by *St.* 1817, *c.* 87, of any trust created by a mortgage deed. Such a deed, it was said, " does not *per se* create a trust ; it conveys the estate subject to a condition. The mortgagee is not accountable to any one, until he enters and takes possession, and receives the rents and profits ; in which case he may, in some sense, be considered as trustee ; for he is to render an account. But this must be done in the manner and for the purposes provided in the several statutes for redeeming mortgages, and he is not trustee in any other light." So in *Putnam* v. *Putnam*, 4 Pick. 139, it was decided that no additional authority was given to this court, as a court of equity, on the subject of redeeming mortgages, by any of the several statutes which had been passed in relation to the chancery jurisdiction of this court. The same rule of construction must apply to the Rev. Sts. *c.* 81, § 8, and is decisive against the plaintiff's claim.

*Bill dismissed.*

*Newton & Bridges*, for the plaintiff.
*Barton & Bacon*, for Sibley.
*E. Washburn*, for W. A. and E. M. Robinson.